IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

EVERY RICHARDSON,
ADC #139311                                                                                    PLAINTIFF

V.                              CASE NO. 5:17-CV-335-JM-BD

WENDY KELLEY and
RORY GRIFFIN                                                                                  DEFENDANTS

## RECOMMENDED DISPOSITION

I.  **Procedure for Filing Objections:**

This Recommended Disposition (Recommendation) has been sent to Judge James M. Moody Jr. Any party may file written objections with the Clerk of Court. To be considered, objections must be filed within 14 days. Objections should be specific and should include the factual or legal basis for the objection.

If parties do not file objections, they risk waiving the right to appeal questions of fact. And, if no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record.

II.  **Discussion:**

A.  Background

Every Richardson, an Arkansas Department of Correction ("ADC") inmate, filed this lawsuit without the help of a lawyer under 42 U.S.C. § 1983. (Docket entry #2) Mr. Richardson claims that Defendants Kelley and Griffin violated his eighth amendment rights by their deliberate indifference to his serious medical needs. The Court previously dismissed Mr. Richardson's claims arising prior to July 2016. (#28) Defendants have now

moved for summary judgment on Mr. Richardson's remaining claims against them. (#33) Mr. Richardson has not responded to the motion, and the time for responding to the motion has passed. (#36)

    B.  Standard

In a summary judgment, the Court rules in favor of a party before trial. A party is entitled to summary judgment if the evidence, viewed in a light most favorable to the party on the other side of the lawsuit, shows that there is no genuine dispute about any fact important to the outcome of the case. *See* FED. R. CIV. P. 56 and *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

    C.  Deliberate-Indifference Claim

A public official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment ban against cruel punishment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "Deliberate indifference" is evidenced, however, only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Negligence, even gross negligence, is insufficient to establish liability. *Fourte v. Faulkner County, Arkansas*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). Defendants can be held liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240-1241 (8th Cir. 1997) (citing

*Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). See also *Allard v. Baldwin*, 779 F.3d 768, 771-72 (8th Cir. 2015) (to prevail on Eighth Amendment claim, inmate must show defendant's mental state was akin to criminal recklessness).

Furthermore, mere disagreement with treatment decisions does not rise to the level of a constitutional violation. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). Stated another way, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that 'he did not feel' he received adequate treatment." *Dulany*, 132 F.3d at 1240.

Here, Mr. Richardson's medical records prove that from June 2016 through December 2017, he was consistently treated for wounds to his lower extremities. During that time, Mr. Richardson's wounds were evaluated, and his dressings were changed almost always on a weekly basis, and sometimes more frequently. (#35-5 at pp.184-86, 178-81, 175-76, 173, 170, 168, 166, 163-65, 159-60, 155, 152, 147, 142-43, 140, 137-38, 131-36, 126-27, 123-24, 121, 118, 109-12, 106-9, 101-4, 95-96, 93, 91, 86-88, 79-81, 73-77, 71, 69, 65-68, 61-63, 59, 54-57, 49-52, 46, 42, 41, 39, 37, 34, 29-30, 12, 6, 3-4, 2) Mr. Richardson was also consistently provided an unna boot between June 2016 and September 2016, and again from April 2017 through September 2017. (*Id.* at pp.184-85, 181, 179, 177, 176, 175, 173, 170, 168, 166, 163-65, 160, 159, 86-88, 81, 79-80, 77, 76, 73-74, 71, 69, 67-68, 66, 63, 61-62, 59, 57, 55, 51-52, 49-50, 46, 42, 39, 37, 34, 30)

In Dr. Jeffrey Stieve's declaration attached to the Defendants' motion for summary judgment, he explains that "[a]n unna boot is a special dressing that is infused

3

with medication that is used on open wounds on a person's lower extremities." (#35-4 at p.3) During the time period at issue, if medical personnel determined that Mr. Richardson's wounds did not require an unna boot or a more complex dressing, he was frequently provided Band-aids. (#35-5 at pp.166, 152, 142-43, 134-138, 123, 109-110, 106-07, 104, 103, 95-96, 93)

In addition, during the relevant time, Mr. Richardson underwent x-ray examinations and an ultrasound; cultures of his wounds were taken on multiple occasions so that he could be provided more precise medical treatment. (*Id*. at pp.184-85, 159, 140, 137, 127, 121, 81, 34, 31, 3-4) Based on the results of those tests, as well as the monitoring of Mr. Richardson's wounds, he was prescribed Keppra, Duloxetine, Clindamycin, Sulfamethoxazole, Mupirocin, and Amoxicillin. (*Id*. at pp.155, 111-112, 108, 95, 91, 79-80, 72, 64, 65, 54, 41, 29, 12) He was also provided Bactroban, Bacitracin, and Venelex ointment to apply directly to the wound area. (*Id*. at pp.132-33, 123, 91, 65)

Importantly, Mr. Richardson's medical records indicate that he did not suffer from any "immune or circulatory issues, such as sickle cell, or HIV, etc." (#35-5 at p.127) Rather, his wounds were "most likely self-inflicted and worsened by fecal contamination." (*Id*.) Medical staff also suggested that Mr. Richardson's wounds were "tampered with" or "manipulated." (*Id*. at pp.164, 133) At various times, Mr. Richardson tested positive for proteus, enterococcus, staphylococcus, and mixed flora. (*Id*. at pp.159, 132, 108, 72)

Furthermore, Mr. Richardson admitted that he refused to use Band-aids on his wounds when those were provided and that he used bedsheets, tissue paper, and paper towels to cover his wounds. (#35-1 at p.29) His medical records support this statement. (#35-5 at pp.130-131, 126-28, 121, 114, 112, 101) Despite the medical staff's instructions to use both the dressings and ointment provided, on many occasions, Mr. Richardson chose to cover his wounds with brown paper towels, rather than using the Band-aids that had been provided. (#35-5 at pp.143, 140, 138, 134, 130-32, 128, 124, 116-18, 114, 109-12, 106, 103-04, 101, 96, 93, 88, 81, 80, 69, 55-56, 42)

In his deposition, Mr. Richardson testified that, since 2011, he has suffered from ulcers on the backs of his ankles. (#35-1 at p.18) He explained that he notified Defendant Kelley of his failure to receive medication and medical treatment on many occasions, but that she failed to remedy the situation. (#35-1at pp.18-21) In his deposition, Mr. Richardson also repeatedly complained that Defendants Griffin and Kelley should have had additional security measures in place to allow his dressings to be changed more frequently. (*Id*. at pp.53, 58, 80)

Based on a review of Mr. Richardson's extensive medical records, it is clear that his medical needs were consistently monitored and addressed by medical staff members. Mr. Richardson may have experienced a few minor delays in the changing of his wound dressings, but these delays do not rise to the level of a constitutional violation. (#2 at pp.141, 160, 162) Although Mr. Richardson insists that his wound dressings should have been changed more frequently, he concedes that Defendants Griffin and Kelly are "not medical, so they can't authorize medical treatments." (#35-1 at p.60) Finally, Mr.

Richardson admitted that, after August 2016, when medical personnel ordered that his dressings be changed on a weekly basis, that was "pretty much" done. (*Id*. at p.37)

In his declaration attached to the Defendants' motion, Dr. Stieve testified that Mr. Richardson had received "appropriate and satisfactory" medical treatment for his complaints, and "there is not any additional action that Director Wendy Kelly or Deputy Director Rory Griffin, who are not medical professionals, could have taken." (#34-4 at p.4) Mr. Richardson has not come forward with any evidence to contradict Dr. Stieve's testimony. Without any such evidence, Mr. Richardson has failed to create a genuine issue of material fact regarding his deliberate-indifference claim. Defendants' motion is well taken, and they are entitled to judgment as a matter of law.

**III.   Conclusion:**

The Court recommends that the Defendants' motion for summary judgment (#33) be GRANTED. Mr. Richardson's claims should be DISMISSED, with prejudice.

DATED, this 6th day of February, 2019.

_____
UNITED STATES MAGISTRATE JUDGE